STATE of Wisconsin, Plaintiff-Respondent,

v.

Daniel L. GAULRAPP, Defendant-Appellant. †

Court of Appeals

*No. 96–1094–CR. Submitted on briefs September 25, 1996.—Decided December 27, 1996.*

(Also reported in 558 N.W.2d 696.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Ralph A. Kalal* of *Kalal & Associates* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Mary Ellen Karst*, asst. district attorney.

Before Vergeront, Roggensack and Deininger, JJ.

VERGERONT, J. Daniel Gaulrapp appeals a judgment of conviction for possession of cocaine and tetrahydrocannabinols (THC), in violation of §§ 161.41(3m) and 161.41(3r), STATS., respectively. He contends that the trial court erred in denying his motion to suppress the results of a search of his person and vehicle, conducted after he was detained for driving a truck with a loud muffler. Gaulrapp argues that the police illegally expanded the scope of the traffic stop when they began asking him about drugs and firearms and asked for permission to search him and his vehicle. We conclude that the police did not illegally extend the detention and that Gaulrapp freely and voluntarily consented to the search. We therefore affirm the decision of the trial court.

## BACKGROUND

At the hearing on the motion to suppress, Dane County Sheriff's Deputy Todd Endl and City of Madison Police Officer Ann Lehner testified. On September 12, 1995, Endl and Lehner were conducting drug investigations in an unmarked squad car on West Broadway Street and U.S. Highway 51 in Madison. They observed a GMC pickup truck with a loud muffler that was almost dragging on the roadway. Endl and Lehner were able to hear the muffler even though the windows on their car were up and the police radio was on. The officers waited for a safe location to stop the truck for the loud muffler.

After the officers stopped the vehicle, the driver identified himself as Daniel Gaulrapp by providing Endl with a Wisconsin photo driver's license. Gaulrapp indicated that he knew his muffler was loud and that was probably why they stopped him. Lehner asked Gaulrapp where he was coming from. Gaulrapp said he was coming from a motel where he was lining up a landscaping job. Lehner then asked Gaulrapp if he had any drugs or weapons inside his vehicle. Gaulrapp stated that he did not. At that point, Lehner asked Gaulrapp if she could search his truck and he said she could. One of the officers then asked for permission to search his person for any contraband or weapons.[1] The officers testified that Gaulrapp stated that, yes, they could.

Endl searched Gaulrapp and found an empty pen casing in his front left shorts pocket with a white

---

[1] The testimony was inconsistent as to which officer asked Gaulrapp for permission to search his person. The trial court noted this inconsistency in its findings of fact. However, this inconsistency is not pertinent for purposes of this appeal.

powdery residue inside. In the same pocket, Endl found an empty green Excedrin bottle with a white powder residue inside. Based on his training and experience, Endl believed the residue to be cocaine. Endl asked Gaulrapp what was inside the pen casing and Excedrin bottle, and Gaulrapp said that it might be cocaine. Lehner again asked Gaulrapp if he had any drugs inside his truck. Gaulrapp said that he had marijuana inside of a paper bag on the front seat of the truck. Lehner located the bag and inside of the bag found what she described as a "cookie tin" which contained a substance that she believed was marijuana.

Gaulrapp moved the trial court to suppress the evidence on the ground that the police illegally expanded the scope of the traffic stop when they asked him about drugs and weapons. The trial court held that the initial stop was proper under the Fourth Amendment because the police had a valid objective reason to make the stop—the loudness of the muffler. Second, the court concluded the stop was of permissible length and scope because the request to search was made within a short time after the stop. Finally, the court concluded that Gaulrapp's consent to the searches was freely and voluntarily given. The trial court denied Gaulrapp's motion for reconsideration. Gaulrapp entered no contest pleas to the two charges and was placed on probation.

On review of a denial of a suppression motion, the trial court's findings of fact will be upheld unless they are clearly erroneous. Section 805.17(2), STATS. Whether those facts satisfy the constitutional requirement of reasonableness under the Fourth Amendment, however, presents a question of law subject to de novo review. *State v. Jackson*, 147 Wis. 2d 824, 829, 434 N.W.2d 386, 388 (1989). Similarly,

whether consent to a search meets the constitutional standard of voluntariness requires independent appellate review. *State v. Johnson*, 177 Wis. 2d 224, 233, 501 N.W.2d 876, 879 (Ct. App. 1993).

## DISCUSSION

The temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. —, —, 116 S. Ct. 1769, 1772 (1996). An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. *Id.* at —; 116 S. Ct. at 1772.[2] A traffic stop is generally reasonable if the officers have probable cause to believe that a traffic violation has occurred, *id.*, or have grounds to reasonably suspect a violation has been or will be committed. *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984), *citing Terry v. Ohio*, 392 U.S. 1 (1968).

Gaulrapp concedes that Deputy Endl and Officer Lehner had either probable cause or reasonable suspicion to believe that he had violated a traffic law.[3]

---

[2] Both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution guarantee the right of citizens to be free from unreasonable searches and seizures. The Wisconsin Supreme Court follows the United States Supreme Court's interpretation of the search and seizure provision of the Fourth Amendment in construing the same provision of the state constitution. *State v. Fry*, 131 Wis. 2d 153, 171-72, 388 N.W.2d 565, 573 (1986), *cert. denied*, 479 U.S. 989 (1986).

[3] Section 347.39(1), STATS., provides: "No person shall operate . . . any motor vehicle . . . unless such vehicle is equipped

However, Gaulrapp argues that even though the initial detention was justified, the police illegally expanded the scope of the detention by asking him about drugs and weapons and for permission to search his person and vehicle. He relies on language in *Terry*, which provides that the stop and inquiry must be "reasonably related in scope to the justification" for the stop. *Terry*, 392 U.S. at 29. According to Gaulrapp, since the officers did not acquire information during the traffic stop that provided a reasonable suspicion that Gaulrapp had drugs or weapons on his person or in his vehicle, they could not ask a question on those topics or ask to search. In Gaulrapp's view, his consent is not valid because the questions violated the limitations of *Terry*.

In *Ohio v. Robinette*, — U.S. —, 117 S. Ct. 417 (1996), the United States Supreme Court recently addressed the validity of a consent to search in a very similar factual situation. An Ohio deputy sheriff stopped Robinette for speeding, gave him a verbal warning, and returned his driver's license. The deputy then asked Robinette whether he was carrying any illegal contraband, weapons or drugs in his car. Robinette answered "no" and consented to a search of his car, which revealed a small amount of marijuana and another controlled substance. He was arrested for knowing possession of a controlled substance. *Id.* at —, 117 S. Ct. at 419.

Robinette's pretrial suppression motion was denied, but the Ohio Court of Appeals reversed on the

---

with an adequate muffler . . . properly maintained to prevent excessive or unusual noise . . . ." For purposes of this appeal, the critical point is that the initial stop was permissible under the Fourth Amendment. We need not decide which standard was met—probable cause or reasonable suspicion.

ground that the search resulted from an unlawful detention. *Id.* at —, 117 S. Ct. at 419. The Supreme Court of Ohio affirmed, establishing a bright-line prerequisite that an officer clearly state when a citizen validly detained for a traffic violation is legally free to go. *Id.* at —, 117 S. Ct. at 419-20.

The United States Supreme Court reversed. The Court held that the Fourth Amendment does not require that a lawfully seized person be advised that he or she is free to go before his or her consent to search will be recognized as voluntary. The Court stated that the Fourth Amendment's touchstone is reasonableness, which is measured in objective terms by examining the totality of the circumstances. Similarly, the Fourth Amendment test for a valid consent to search is that the consent is voluntary, and voluntariness is a question of fact to be determined from all the circumstances. *Id.* at —, 117 S. Ct. at 421.

██ The trial court here made extensive findings, and the record supports its findings. The court found the detention was of a short duration and the request to search was made within a reasonable time. The court found that Gaulrapp was not under the influence of intoxicants, he appeared to understand the requests, no handcuffs were used, no threats or promises were made, he did not object at any time during the search of his person or vehicle, and the scope of the searches did not exceed the consent.

Based on *Ohio v. Robinette*, we must reject Gaulrapp's argument that the officers had to tell Gaulrapp he was free to leave after they questioned him about the muffler. Instead, we must consider all the circumstances in deciding whether Gaulrapp freely

and voluntarily consented to the search. We conclude that he did.

Gaulrapp argues, however, that the very asking of the first question about drugs and firearms, without a reasonable suspicion that he possessed either, transformed the legal stop into an illegal stop, making his consent automatically invalid. In *Robinette*, the police asked the suspect the same question, immediately followed by a request to search, just as in this case. The Court in *Robinette* did not expressly decide whether the asking of this question and asking permission to search violated the Fourth Amendment. However, we have difficulty in reconciling its conclusion—that Robinette's consent to search, if voluntary based on all the circumstances, is valid—with Gaulrapp's proposition that the consent is invalid solely because the officers could not legally ask to search in the first place.

The cases Gaulrapp relies on are factually distinguishable. They involve prolonged detention after the officers concluded or should have concluded that the justification for the initial stop did not warrant further detention. *See United States v. Ramos*, 20 F.3d 348, 351-53 (8th Cir. 1994) (illegal detention occurred when, after original purpose of stop was accomplished, passenger was questioned in police car for forty minutes; consent to search tainted by this illegality); *United States v. McSwain*, 29 F.3d 558, 561-64 (10th Cir. 1994) ("protracted" detention after purpose of stop satisfied was illegal and made consent invalid); *United States v. Lee*, 73 F.3d 1034, 1040 (10th Cir. 1996) (consent to search invalid because deputy did not return documents relating to initial justification for stop before asking for consent to search).

██

Gaulrapp's focus on the subject of the question the officers asked rather than its effect on the duration of the seizure is not supported by recent Fourth Amendment cases. Mere police questioning does not constitute a seizure. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). No seizure occurs when police, without the reasonable suspicion justifying a *Terry* stop, ask questions of an individual and ask to search him or her, so long as the police do not convey that compliance with the request is required. *Id.* at 437. When there is justification for a *Terry* stop, it is the extension of a detention past the point reasonably justified by the initial stop, not the nature of the questions asked, that violates the Fourth Amendment. *United States v. Shabaz*, 993 F.2d 431, 436-38 (5th Cir. 1993).

Gaulrapp's detention was not unreasonably prolonged by the asking of one question. After that question, the detention was prolonged because Gaulrapp consented to the search. Once Endl found the white powdery residue on Gaulrapp's person, believing it to be cocaine, he had a reasonable suspicion to justify further questioning about drugs.

██

Gaulrapp also argues that the officers' brief discussion with Gaulrapp before asking to search, and their failure to pursue the muffler violation after searching him, demonstrate that the loud muffler was a pretext for the stop. That pretext, Gaulrapp suggests, makes the continued detention unlawful and the consent invalid. However, the United States Supreme Court rejected this same argument in *Robinette*. The subjective intentions of the officers do not make the continued detention illegal as long as the officers have a probable cause or reasonable suspicion to detain in

the first instance. *Robinette*, 117 S. Ct. at 421. *See also Whren v. U.S.*, 517 U.S. —, 116 S. Ct. 1769, 1774 (1996).[4] Since there was a legally permissible justification to stop Gaulrapp based on the loud muffler, the officers' subjective reason for stopping him does not create or contribute to a Fourth Amendment violation.

*By the Court.*—Judgment affirmed.

[4] Actual motivation of officers is relevant if there is a claim of selective enforcement based on consideration such as race. *Whren v. U.S.*, 517 U.S. —, 116 S. Ct. 1769, 1774 (1996). However, the constitutional basis for such a claim is the Equal Protection Clause, not the Fourth Amendment. *Id.* Gaulrapp is not making such a claim.