SHIRLEY S. ABRAHAMSON, J.
¶ 63. (concurring). This case addressing the constitutionality of a vehicle stop based on a non-traffic forfeiture offense is one of first impression.[1]1 conclude that a state trooper has authority, under certain circumstances, to stop a vehicle based on probable cause or reasonable suspicion of a violation of Wisconsin's littering statute, Wis. Stat. § 287.81.[2]
¶ 64. My concern is that the majority opinion seems to explicitly reject the touchstone of Fourth Amendment jurisprudence.[3] Majority op., ¶ 50. The Fourth Amendment prohibits unreasonable searches and seizures.[4] "An automobile stop must not be unrea *337 sonable under the circumstances."[5] Reasonableness is gauged under the totality of the circumstances.[6]
¶ 65. The majority opinion explains how it analyzes the reasonableness of the automobile stop in the instant case: "not in terms of the traditional totality of the circumstances test based on Iverson's driving on the evening in question but, more abstractly, in terms of whether a traffic stop for littering is ever reasonable . . . ."[7] The majority opinion does not explain what its "abstract" approach entails or how this "abstract" approach meshes with the traditional reasonableness under the totality of the circumstances analysis.[8]
¶ 66. The court has frequently stated that reasonableness under the Fourth Amendment depends on a court's balancing the public interest against an individual's right to personal security free from inter *338 ference by law enforcement.[9] In striking this balance, a court must carefully scrutinize the totality of the circumstances.[10] The majority opinion does not apply this balancing test.
¶ 67. When a court looks at the public interest in a typical vehicle stop case, the underlying offense is ordinarily a criminal or traffic violation. The public interest is high in such a case. Public safety is ordinarily at risk by criminal behavior or a violation of traffic laws.[11] The public interest in stopping the vehicle in the instant case is comparatively low; there is no evidence that throwing a single cigarette butt from Iverson's car created any hazard. In the case of a civil, non-traffic, forfeiture offense (like littering), the state's interests in ensuring safe travel and combating crime are either non-existent or significantly weaker than in a vehicle stop for a crime or a traffic violation.[12]
*339 ¶ 68. The individual's countervailing interest is personal security and freedom from intrusion by the government. Unlike other courts, the majority opinion is dismissive of the intrusiveness of a vehicle stop. A vehicle stop by a law enforcement officer is a "major interference in the lives of the [vehicle's] occupants." Coolidge v. New Hampshire, 403 U.S. 443, 478 (1971).
¶ 69. An intrusion on privacy occurs every time a law enforcement officer stops a car, regardless of the motivation for the stop. A vehicle stop interferes with a person's freedom of movement and is inconvenient, time-consuming, and anxiety-inducing. Moreover, a vehicle stop provides a law enforcement officer with an opportunity for further intrusion on the driver, passengers, and the contents of the vehicle.[13]
¶ 70. For this reason, some courts have declined to extend the general reasonable suspicion standard in striking the balance between public and individual interests in cases of vehicle stops for extremely minor infractions, such as a parking violations.[14]
*340 ¶ 71. The majority opinion suggests that "the issuance of a littering citation is notably different from the issuance of, for example, a parking ticket," because parking tickets are placed on a stopped vehicle and track the registered owner, while a littering citation is issued to the litterer.[15] True, but constitutionally not relevant. There is a similarity between stopping a vehicle for littering and stopping a moving vehicle for an observed parking violation. In both instances the public interest in enforcing the minor offense is comparatively low, while the individual's right to be free from the intrusion of having the vehicle stopped remains the same as in any other vehicle stop.
¶ 72. When an officer has reasonable suspicion to issue a parking ticket or a littering citation, in the absence of some public safety risk or other significant public interest, the public interest in issuing the citation does not automatically overcome an individual's right to be free from the intrusion of having the vehicle stopped.
¶ 73. This distinction between an infraction that does and does not present a public safety risk or otherwise violate a significant public interest is illustrated by several examples on which the majority opinion relies. The majority opinion illuminates that "discarded lit cigarettes in particular can cause brush, grass, and forest fires leading to property damage."[16] *341 The majority opinion also explains that throwing a large bag of trash out of a moving vehicle is dangerous to others who use the road.[17]
¶ 74. The examples in the majority opinion suggest circumstances that would be relevant under a totality of the circumstances analysis. A cigarette butt thrown out of a vehicle in a dry, fire-prone area may very well pose a risk to public safety and the environment. No such danger by the single cigarette butt in the instant case is alleged. Ash from a cigarette likely poses no danger at all.[18] A trash bag thrown out of a moving vehicle obviously may very well pose a danger to other motorists; a single cigarette butt ordinarily does not. These examples flesh out the totality of circumstances to be considered.
¶ 75. In the instant case, no proof of a public safety risk was offered. Iverson was driving in the wee hours of the morning in the city of La Crosse. There is no evidence in the record suggesting that other drivers on the road were somehow endangered by the passenger's tossing a cigarette butt, let alone that there was a risk of fire, property damage, or other significant danger as a result of the discarded cigarette.
¶ 76. Rather, the traffic stop in this case is a variation on familiar themes. The trooper stopped Iverson based on a minor violation, here littering. See Wis. Stat. § 287.81. The stop was pretextual. The trooper's true motive was not to issue a citation for littering, but to investigate a more serious traffic offense or potentially criminal offense, namely drunk driving. The trooper saw Iverson's vehicle driving late *342 at night and began following the vehicle. The trooper saw the vehicle drift within its lane and stop at two flashing yellow lights despite the absence of traffic.
¶ 77. The trooper evidently had a hunch that the driver was intoxicated (and his hunch was apparently correct). The trooper concluded, however, that he did not have reasonable suspicion to stop the vehicle.[19] Then came the "a-ha" moment. When the trooper saw a cigarette butt thrown from the passenger side of the vehicle, the trooper concluded that he had grounds to stop the vehicle.
¶ 78. Underscoring the pretextual nature of the stop, neither Iverson nor his passenger was cited for littering. Instead, Iverson was arrested for drunk driving.
¶ 79. The circuit court relied on the pretextual nature of the stop in granting the motion to suppress. However, under Whren v. United States, 517 U.S. 806, 813 (1996), and other cases, the constitutional reason-ability of a stop does not depend on the subjective *343 motivations of the officer.[20] Pretextual stops have been accepted under the Fourth Amendment.
¶ 80. In the instant case the dominant factors to gauge in assessing the reasonableness of the vehicle stop under the totality of the circumstances can be summarized as follows: the public interest in this particular stop for littering was slight or insubstantial; a vehicle stop is a significant intrusion on a person's security; the statutory violation was flimsy; and the reason for the vehicle stop was pretextual. This combination of circumstances, had the case been presented this way, might lead me to conclude that the vehicle stop was not reasonable under the Fourth Amendment.
¶ 81. I caution that the majority opinion should not be over read. I do not think the majority intends its opinion to be read as granting law enforcement officers extraordinarily broad powers to stop vehicles without meaningful judicial review.
¶ 82. In sum, the traditional Fourth Amendment rules still apply in Wisconsin. The Fourth Amendment prohibits unreasonable searches and seizures.[21] Rea *344 sonableness is gauged under the totality of the circumstances.[22] "An automobile stop must not be unreasonable under the circumstances."[23]
¶ 83. Reasonableness depends on a court's balancing the public interest against an individual's right to personal security free from interference by law enforcement. In striking this balance, a court must carefully scrutinize the totality of the circumstances. Unfortunately, the majority opinion did not apply these rules. I therefore write separately.
¶ 84. Before I conclude, however, I add a comment about the statutes applicable in the instant case. The statutes at issue are part of Wis. Stat. chapter 287, entitled "Solid Waste Reduction, Recovery and Recycling."
¶ 85. Wisconsin Stat. § 287.81(2), entitled "Littering," provides that a person who "[d]eposits or discharges any solid waste on or along any highway" or "[p]ermits any solid waste to be thrown from a vehicle operated by the person" may be required to forfeit no more than $500.[24]
*345 ¶ 86. Section 287.01(10) adopts the meaning of "solid waste" set forth in Wis. Stat. § 289.01(33).[25] The definition of "solid waste" lists many materials, including garbage, refuse, and materials resulting from "community activities."[26] "Refuse" is defined in part as "matters produced from industrial or community life."[27]
¶ 87. The phrases "community activities" and "produced from industrial or community life" defy almost any effort at definition.
¶ 88. Would a simpler littering statute not intimately connected with solid waste suffice, so a court need not spend 14 paragraphs, 9 double-spaced pages, and a lot of dictionary research for a discourse on whether a cigarette butt violates the littering statute? "Littering" is a word in common usage, with a generally accepted meaning, but the word "littering" is not used in chapter 287 other than in the title to subchapter IV of chapter 287 and the title of Wis. Stat. § 287.81.
¶ 89. Should the legislature take another look at Wis. Stat. §§287.01 and 287.81? See Wis. Stat. § 13.92(2)0)-
¶ 90. For the reasons set forth, I write separately.
¶ 91. I am authorized to state that Justice ANN WALSH BRADLEY joins ¶¶ 64-66 of this opinion.

 Other cases have considered whether, outside the context of a vehicle stop, a stop for a non-traffic forfeiture offense is constitutionally permissible. See City of Milwaukee v. Nelson, 149 Wis. 2d 434, 439 N.W.2d 562 (1989).

 See majority op., ¶ 50.

 U.S. Const, amend. IV.

 See Ohio v. Robinette, 519 U.S. 33, 39 (1996) ("Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances."); Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977) ("Reasonableness, of course, depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'") (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)).

 State v. Popke, 2009 WI 37, ¶ 11, 317 Wis. 2d 118, 765 N.W.2d 569 (citing State v. Gaulrapp, 207 Wis. 2d 600, 605, 558 N.W.2d 696 (Ct. App. 1996)); see also State v. Houghton, 2015 WI 79, ¶ 29, 364 Wis. 2d 234, 868 N.W.2d 143 ("It is undisputed that traffic stops must be reasonable under the circumstances.") (citing Gaulrapp, 207 Wis. 2d at 605).

 See Mimms, 434 U.S. at 108-09 ("The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.") (quoting Terry v. Ohio, 392 U.S. 1, 19 (1968)); see also Robinette, 519 U.S. at 39 ("Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances."); State v. Malone, 2004 WI 108, ¶ 21, 274 Wis. 2d 540, 683 N.W.2d 1 (a court must "carefully scrutinize the totality of the circumstances.").

 Majority op., ¶ 50.

 The majority opinion merely states that "if we were to analyze the totality of the circumstances of the stop at issue, we might not reach the question before the court and that analysis would only serve to restate longstanding legal principles." Majority op., ¶ 22.

 Mimms, 434 U.S. at 109 ("Reasonableness, of course, depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'") (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)); see also Malone, 274 Wis. 2d 540, ¶ 21 (citing Mimms).

 Malone, 274 Wis. 2d 540, ¶ 21.

 See State v. Day, 168 P.3d 1265, 1269 (Wash. 2007) (quoting State v. Johnson, 909 P.2d 293, 306 (Wash. 1996)); see also State v. Houghton, 2015 WI 79, ¶ 56, 364 Wis. 2d 234, 868 N.W.2d 143 (recognizing that "[t]he Wisconsin Statutes contain a tremendous number of provisions directed toward safety on the roadway").

 For an example of the United States Supreme Court's considering the non-criminal, civil forfeiture nature of an offense in determining whether exigent circumstances exist to justify a warrantless entry into a home, see Welsh v. Wisconsin, 466 U.S. 740, 749-51 (1984). The gravity of the offense is an important part of the constitutional analysis. Welsh, 466 U.S. at 753.
*339 The seriousness of the underlying offense is also relevant to whether a stop is constitutionally permissible in other contexts. See United States v. Griggs, 498 F.3d 1070, 1081 (9th Cir. 2007) (holding that in assessing an investigatory stop based on a completed misdemeanor, in that case playing a car stereo at excessive volume, "a reviewing court must consider the nature of the misdemeanor offense in question, with particular attention to the potential for ongoing or repeated danger . .. and any risk of escalation .... An assessment of the 'public safety1 factor should be considered within the totality of the circumstances, when balancing the privacy interests at stake against the efficacy of a Terry stop . . ..").

 See, e.g., State v. Williams, 2002 WI 94, ¶ 2, 255 Wis. 2d 1, 646 N.W.2d 834.

 See, e.g., Day, 168 P.3d at 1269 — 70 (declining to allow an investigative stop under Terry for parking infractions); State v. *340 Holmes, 569 N.W.2d 181, 185-86 (Minn. 1997) (concluding that a parking violation was not sufficiently serious to merit a Terry stop, permitting stops based solely on probable cause and "only if the stop is necessary to enforce the violation .. . ."). See also State v. Duncan, 43 P.3d 513, 517-19 (Wash. 2002) (declining to extend Terry to general civil infractions).

 Majority op., ¶ 47 n.15.

 Majority op., ¶ 53 n.17.

 Majority op., ¶ 47.

 Cf. State v. Qualls, No. 2014AP141-CR, unpublished slip op., ¶ 6 (Wis. Ct. App. Oct. 8, 2014) (not reaching the issue of whether ash constituted "litter" under a village ordinance).

 Majority op., ¶ 7 & n.3. The trooper stated that "prior to the cigarette butt being thrown ... I didn't feel.. . that I had the reasonable suspicion to initiate a traffic stop . ..."
The majority opinion insinuates that drifting within a lane and stopping at flashing yellow lights constitute reasonable suspicion of drunk driving. Majority op., ¶ 7 n.3. That conclusion is questionable. See State v. Post, 2007 WI 60, ¶¶ 18-21, 301 Wis. 2d 1, 733 N.W.2d 634 (concluding that repeatedly weaving within a single lane, standing alone, does not constitute reasonable suspicion); State v. McConnell, No. M2012-02238-CCA-R3-CD, 2013 WL 1912584, at *4 (Tenn. Ct. App. May 8, 2013) (finding no reasonable suspicion when the defendant stopped at a flashing yellow light for several seconds before going through the intersection).
Wisconsin Stat. § 346.39(2) provides that "operators of vehicles may proceed through the intersection or past [a flashing yellow light] only with caution."

 This rule has been criticized. See, e.g., 1 Wayne R. LaFave, Search & Seizure: A Treatise on the Fourth Amendment, § 1.4(f) (5th ed. 2012) (critiquing Whren v. United States, 517 U.S. 806 (1996)); State v. Newer, 2007 WI App 236, ¶ 4 n.2, 306 Wis. 2d 193, 742 N.W.2d 923 (Ct. App. 2007) ("We note that the officer's subjective motivation for making a stop is not the issue; if the officer has facts that could justify reasonable suspicion (or probable cause), it is of no import that the officer is not subjectively motivated by a desire to investigate this suspicion. We question the wisdom of this rule when it comes to extremely minor traffic violations, but that is for another day.") (internal citations omitted) (citing Whren v. United States, 517 U.S. 806, 813 (1996); State v. Baudhuin, 141 Wis. 2d 642, 650-51, 416 N.W.2d 60 (1987)).

 U.S. Const, amend. IV.

 Mimms, 434 U.S. at 108-09 ("The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.") (quoting Terry v. Ohio, 392 U.S. 1, 19 (1968)); see also Robinette, 519 U.S. at 39 ("Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances."); Malone, 274 Wis. 2d 540, ¶ 21 (a court must "carefully scrutinize the totality of the circumstances.").

 Popke, 317 Wis. 2d 118, ¶ 11; see also Houghton, 364 Wis. 2d 234, ¶ 29 ("It is undisputed that traffic stops must be reasonable under the circumstances.") (citing Gaulrapp, 207 Wis. 2d at 605).

 Wis. Stat. § 287.81(2)(a), (b).

 Chapter 289 is titled "Solid Waste Facilities."

 Wis. Stat. § 289.01(33).

 Wis. Stat. § 289.01(28).