COURT OF APPEALS
DECISION
DATED AND FILED

October 26, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP96-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF760

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

FRANK K. MILES, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: GLENN H. YAMAHIRO, Judge. *Affirmed*.

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Frank K. Miles, Jr., appeals from a judgment, entered on his guilty pleas, convicting him of possession of a firearm by a felon

and fifth offense operating while intoxicated (OWI). Miles contends the circuit court erroneously denied his suppression motion, which was premised on a claim that Miles was illegally seized and searched. We conclude that the circuit court did not err, so we affirm the judgment.

## BACKGROUND

¶2 According to the criminal complaint, City of Greenfield Police Officer David Meyer was dispatched to a subject with gun complaint at a bar called Drift Inn on February 5, 2018. P.A.L. reported that he and his girlfriend, S.L.H., had been watching two men playing video gambling machines. The two men got up and said they would not be back for twenty minutes. P.A.L. went to use one of the machines, but then the men returned. The men and P.A.L. began arguing. P.A.L. said, "What are you going to do, call the cops?" One of the men pulled out a silver handgun, pointed it at P.A.L., and said, "This is your cops." The two men then fled the bar.

¶3 P.A.L. said that the man with the gun fled in a silver Cadillac. S.L.H. obtained a number from the car's snow-covered license plate; she believed it to be 888-XGP. The Drift Inn's bartender said that one of the two men involved in the altercation was a regular named Frank. Through some investigation, Meyer discovered documentation of a recent police contact with Miles and the silver car—actually a Lincoln, registered to Miles's wife, with the license plate 888-WXP—at a location adjacent to the Drift Inn. Meyer looked up Miles's description, which was a "close" match to the description of the suspect given by P.A.L. A photo array was developed. P.A.L. identified Miles in the array, although he was not fully confident in his choice. In looking up Miles's description, Meyer also learned that Miles had a prior felony conviction.

¶4 On February 12, 2018, Meyer sat in his squad car and monitored Miles's home from the road, intending to arrest Miles for the Drift Inn incident. When Meyer saw the silver car pull into the driveway, he initiated a traffic stop. He activated his lights and parked his car at the end of the driveway. Meyer observed the driver reaching around the car. The driver—Miles—then got out of the car. As Meyer took Miles into custody, the officer noticed that Miles was slurring his speech and smelled strongly of alcohol and marijuana. At some point, Meyer's dispatcher informed him that Miles was subject to a .02 blood-alcohol limit due to prior convictions. Miles was arrested for the firearm incident and operating with a prohibited alcohol concentration. Meyer then searched the car incident to arrest and found a silver Ruger .357 Magnum in the center console.

¶5 The State charged Miles with two counts of possession of a firearm by a felon—one for the bar incident and one for the day of the arrest—and one count of operating a motor vehicle while intoxicated as a fifth or sixth offense. Miles moved to suppress "all evidence seized pursuant to an illegal search of his vehicle and any other derivative evidence." He claimed that there was no reasonable suspicion or probable cause to justify the traffic stop; even if the stop was justified, his warrantless arrest was improper; and even if the arrest was proper, the search of the vehicle was unconstitutional, both as an invalid search incident to arrest and as a warrantless search conducted within the curtilage of Miles's home. The circuit court held a motion hearing at which only Meyer testified. Following the hearing, the circuit court denied the suppression motion. Miles then pled guilty to one count of possession of a firearm by a felon and operating while intoxicated as a fifth offense. The other possession charge was

dismissed and read in, as were charges from three other cases.[1] The circuit court imposed consecutive sentences totaling eight and one-half years of imprisonment. Miles appeals.

## DISCUSSION

¶6 The only issue on appeal is whether the circuit court erred when it denied Miles's suppression motion. Review of an order denying a motion to suppress evidence is preserved notwithstanding Miles's guilty pleas. *See* WIS. STAT. § 971.31(10) (2019-20).[2] A circuit court's decision on a motion to suppress is reviewed in two steps. *See State v. Roberson*, 2019 WI 102, ¶66, 389 Wis. 2d 190, 935 N.W.2d 813. First, we will uphold the trial court's findings of historical fact unless clearly erroneous. *See State v. Arias*, 2008 WI 84, ¶12, 311 Wis. 2d 358, 752 N.W.2d 748. A factual finding is clearly erroneous if it is contrary to the great weight and clear preponderance of the evidence. *See id.* We then review *de novo* whether those facts warrant suppression. *See State v. Hampton*, 2010 WI App 169, ¶23, 330 Wis. 2d 531, 793 N.W.2d 901.

### I. Reasonable Suspicion for the Stop

¶7 Miles contends that Meyer lacked reasonable suspicion to conduct a traffic stop. The temporary detention of a person during a traffic stop constitutes a seizure under the Fourth Amendment. *See State v. Gaulrapp*, 207 Wis. 2d 600,

---

[1] The charges in the three other Milwaukee County Circuit Court cases were felony bail jumping in case No. 2018CM2354, resisting or obstructing an officer in case No. 2019CM1980, and a refusal to submit a sample for a chemical test for intoxication following an arrest in case No. 2018TR4193.

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

605, 558 N.W.2d 696 (Ct. App. 1996). Thus, an investigatory stop is subject to the constitutional requirement of reasonableness. *See* **State v. Post**, 2007 WI 60, ¶12, 301 Wis. 2d 1, 733 N.W.2d 634. When conducting an investigatory stop, officers must have reasonable suspicion, grounded in specific articulable facts and reasonable inferences therefrom, that a particular person has violated the law. *See* **State v. Gammons**, 2001 WI App 36, ¶6, 241 Wis. 2d 296, 625 N.W.2d 623; *see also* **Berkemer v. McCarty**, 468 U.S. 420, 439 (1984).

¶8     Miles contends that he was seized at the moment Meyer activated his lights and parked his car behind Miles but, at that moment, Meyer lacked reasonable suspicion because he "had no knowledge of who was inside the Lincoln when he conducted the traffic stop[.]" Thus, Miles argues, Meyer "acted on an 'inchoate and unparticularized suspicion or hunch'" rather than reasonable suspicion, and an inchoate hunch is insufficient to pass constitutional muster.

¶9     It is true that Meyer did not know who was driving the Lincoln at the moment he initiated the traffic stop. What he did know was that Miles was a suspect in the prior week's Drift Inn incident; during that incident, Miles fled in a silver car; the license plate of that car, as provided by S.L.H., was substantially similar to the actual license plate of a silver Lincoln registered to Miles's wife; Miles and the Lincoln appeared in another incident report for a location near the Drift Inn; and Meyer was currently observing the Lincoln pull into the driveway of the Miles home. The circuit court stated, and we agree, that it was a reasonable inference that the spouse (Miles) of a registered vehicle owner (Miles' wife) may be driving that vehicle; this is particularly true where, as here, there is relatively recent documentation of the spouse doing just that. Thus, there were specific, articulable facts from which Meyer could reasonably infer that Miles had

committed a crime and it was further reasonable to initiate the traffic stop to investigate whether Miles was currently in the target vehicle.

¶10 Further, when Miles opened the car door, which turned on the interior light, Meyer observed nothing that might have dissipated his reasonable suspicion, such as a person of a different gender. *See, e.g.*, *State v. Newer*, 2007 WI App 236, ¶8, 306 Wis. 2d 193, 742 N.W.2d 923 ("If an officer comes upon information suggesting that [an] assumption is not valid in a particular case … reasonable suspicion would, of course, dissipate."). Based on the foregoing, we conclude that the traffic stop was supported by reasonable suspicion and, thus, the circuit court properly declined to suppress evidence on that basis.

## II. Probable Cause for Arrest

¶11 Miles next argues that, even if the traffic stop was supported by reasonable suspicion, Meyer still lacked probable cause to arrest him. "Warrantless arrests are unlawful unless they are supported by probable cause." *State v. Blatterman*, 2015 WI 46, ¶34, 362 Wis. 2d 138, 864 N.W.2d 26. The State bears the burden of showing it had probable cause for the arrest. *See id.* "Probable cause for arrest exists when the totality of the circumstances within the arresting officer's knowledge would lead a reasonable police officer to believe that the defendant probably committed a crime." *State v. Kutz*, 2003 WI App 205, ¶11, 267 Wis. 2d 531, 671 N.W.2d 660. "In determining whether probable cause exists, the court applies an objective standard[.]" *Id.*, ¶12.

¶12 "While the information must be sufficient to lead a reasonable officer to believe that the defendant's involvement in a crime is 'more than a possibility,' it 'need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not.'" *Id.*, ¶11 (citation omitted). Whether the

6

evidence is sufficient to demonstrate probable cause is a question of law, which we review *de novo*. *See id.*, ¶13.

¶13    Miles asserts that he was arrested the moment Meyer ordered him out of the car at gunpoint, and that the timing of the arrest is important because it limits the facts this court can consider in the probable cause analysis. *See State v. Young*, 2006 WI 98, ¶23, 294 Wis. 2d 1, 717 N.W.2d 729. Miles believes that Meyer lacked probable cause because the officer did not know at the particular moment of arrest that Miles was driving the car.

¶14    However, the identity of the person driving the vehicle on February 12, 2018, is irrelevant to whether there was probable cause to believe that Miles had unlawfully possessed a firearm on February 5, 2018. Even if Meyer had not directly encountered Miles on February 12, the "quantum of evidence" within police knowledge on that date was objectively adequate to establish probable cause for the possession charge. *See State v. Howes*, 2017 WI 18, ¶28, 373 Wis. 2d 468, 893 N.W.2d 812 (citation omitted).

¶15    The facts previously discussed herein as supporting reasonable suspicion for the stop, *see supra*, ¶9, also support the probable cause determination. In addition to those facts, Meyer also knew that P.A.L. had tentatively identified Miles from a photo array; that although P.A.L. was not certain in his identification, the Drift Inn bartender had identified a regular named Frank as part of the confrontation; and that Miles had at least one prior felony conviction. Based on the totality of the information available, then, Meyer had probable cause to arrest Miles for the February 5 incident. Thus, the circuit court properly declined to suppress evidence on that basis.

### III. *The Vehicle Search*

¶16     Finally, Miles argues that the search of his vehicle following his arrest was unlawful for two reasons. First, Miles claims the search violated the search-incident-to-arrest rule established in *Arizona v. Gant*, 556 U.S. 332, 343-44 (2009). Second, Miles believes the search was impermissible because it was conducted within the curtilage of his home.

### A. Search Incident to Arrest

¶17     "[W]arrantless searches are per se unreasonable unless they fall within a well-recognized exception to the warrant requirement." *State v. Foster*, 2014 WI 131, ¶32, 360 Wis. 2d 12, 856 N.W.2d 847. "When a defendant challenges evidence that has been obtained through a warrantless search, the State bears the burden to establish that the search was justified by a recognized exception to the warrant requirement." *State v. Prado*, 2020 WI App 42, ¶11, 393 Wis. 2d 526, 947 N.W.2d 186, *aff'd*, 2021 WI 64, ¶5, 397 Wis. 2d 719, 960 N.W.2d 869. One recognized exception to the warrant requirement is a search incident to a lawful arrest. *See id.*; *see also* *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2174 (2016).

¶18     In *Chimel v. California*, 395 U.S. 752, 762-63 (1969), the United States Supreme Court explained that because a search of a person incident to lawful arrest was reasonable, there was also reasonable justification for searching an area within the arrestee's immediate control. In *New York v. Belton*, 453 U.S. 454, 460-63 (1981), the Supreme Court, intending to give law enforcement a clear principle to rely on, concluded that the passenger compartment of a vehicle was searchable incident to a lawful arrest under *Chimel*. The Wisconsin Supreme Court adopted the *Belton* interpretation in *State v. Fry*, 131 Wis. 2d 153, 170, 388

N.W.2d 565 (1986).  Subsequent to *Fry*, then, the law in Wisconsin was that after a lawful arrest, "police may search the contents of an automobile while the defendant is at the scene" without violating Fourth Amendment protections.  *See State v. Dearborn*, 2010 WI 84, ¶25, 327 Wis. 2d 252, 786 N.W.2d 97.

¶19    In 2009, the United States Supreme Court in *Gant* rejected the interpretation of *Belton* that our supreme court had relied on in *Fry*.  *See Dearborn*, 327 Wis. 2d 252, ¶26.  It explained that *Chimel* authorized police to search a vehicle incident to arrest "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search."  *See Gant*, 556 U.S. at 343.  The Court further concluded, however, "that circumstances unique to the vehicle context justify a search [of an otherwise inaccessible vehicle] incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'"  *See Dearborn*, 327 Wis. 2d 252, ¶26 (brackets in *Dearborn*) (quoting *Gant*, 556 U.S. at 343).

¶20    Miles argues that it was unreasonable to believe evidence of possession of a firearm by a felon would be found thin his vehicle at the time of the stop, claiming Meyer was operating on "stale information" from the week prior.  He notes that during the Drift Inn incident, he allegedly had the gun on him—no one claimed he had retrieved it from his vehicle.  Thus, Miles contends, it was "illogical" to assume that the firearm remained with him indefinitely and even more illogical to assume that the gun remained in Miles's vehicle indefinitely.

¶21    The circuit court explained "there were facts that [Meyer] had knowledge of with regard to the February 5th allegations" and that Meyer

observed Miles "reaching around prior to getting out of his vehicle. There was a basis here to reasonably conclude that the defendant was someone who may regularly travel with a firearm or have it in his vehicle." We agree. Miles previously used the Lincoln to transport himself and the gun to the Drift Inn. Further, Miles's furtive movements upon being stopped made it appear as though he might be hiding something and Meyer could reasonably believe that thing happened to be the gun Miles was known to carry. Thus, the search of the vehicle incident to arrest for possession of a firearm by a felon was not contrary to *Gant*, and the circuit court properly declined to suppress evidence on that ground.[3]

## B. Search Within the Curtilage

¶22    Finally, Miles argues that the search of his vehicle was unreasonable because it occurred within the curtilage of his home, to which the protections of the Fourth Amendment also apply. *See **State v. Dumstrey***, 2016 WI 3, ¶23, 366 Wis. 2d 64, 873 N.W.2d 502.

¶23    There does not appear to be a specific circuit court ruling with respect to the curtilage,[4] although it appears the circuit court may have believed the question was moot upon a finding of probable cause. In any event, we are also not persuaded that any search occurred within the curtilage of Miles's home.

---

[3] Miles also argues that, relative to his "OWI arrest," there was no reason to believe that that alcohol or drugs might be found in the vehicle; Meyer had not observed any impaired driving, nor had he smelled any alcohol or marijuana coming from the vehicle, and a small container from Miles's pocket that smelled like marijuana was empty. Because we conclude that the search of the vehicle was lawful as the felon-in-possession arrest, we need not consider whether the search was justified relative to the OWI charge. In any event, there was no OWI-related evidence recovered, and Miles was not charged with any drug crimes.

[4] It appears that the curtilage issue was not part of the original motion to suppress but was raised in Miles's reply brief to the State's response to the suppression motion.

Curtilage is the land immediately surrounding a house "to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life[.]" *See* ***State v. Artic***, 2010 WI 83, ¶93, 327 Wis. 2d 392, 786 N.W.2d 430 (citations and internal quotation marks omitted). "The curtilage is defined by factors that determine 'whether an individual reasonably may expect that an area immediately adjacent to the home will remain private.'" ***Id.*** (citation omitted). We apply four factors, identified by the United States Supreme Court, in determining whether an area constitutes curtilage:

> the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*See* ***United States v. Dunn***, 480 U.S. 294, 301 (1987); *see also* ***Dumstrey***, 366 Wis. 2d 64, ¶32.

¶24 While Miles acknowledges the four ***Dunn*** factors, he relies on only one: proximity. He tells us, without pointing to any evidence so establishing, that his driveway was "directly abutting his house." Proximity alone does not suffice. Here, there is no indication that the driveway was enclosed or otherwise designed to protect the area from observation and, indeed, we know that Meyer was observing the driveway from the road. There is also no indication that the driveway was used for anything other than parking, which "courts seem overwhelmingly to hold … constitutes a use associated with neither an intimate activity of the home nor a privacy of life." ***Dumstrey***, 366 Wis. 2d 64, ¶41. Miles has failed to establish that the search occurred in a constitutionally protected area. Therefore, suppression is not warranted.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.