STATE of Wisconsin,
Plaintiff-Appellant,†

v.

Joseph R. LUEBECK,
Defendant-Respondent.

Court of Appeals

*No. 2005AP1013–CR. Submitted on briefs February 2, 2006.
—Decided April 19, 2006.*

2006 WI App 87

(Also reported in 715 N.W.2d 639.)

† Petition to review denied 7-25-06.

748

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Sarah K. Larson*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Alex Flynn* of *Alex Flynn & Assoc., S.C.*, Milwaukee.

Before Snyder, P.J., Brown and Anderson, JJ.

¶ 1. SNYDER, P.J. The State appeals from an order suppressing evidence found during the search of Joseph R. Luebeck's vehicle and from a subsequent order affirming the circuit court's original suppression order. The State maintains that the court erred in suppressing the evidence because the law enforcement officer did not impermissibly extend the traffic stop in scope or dura-

tion and, therefore, Luebeck's consent to the warrantless search of his vehicle was valid. The State directs us to *State v. Gaulrapp*, 207 Wis. 2d 600, 558 N.W.2d 696 (Ct. App. 1996), for support of its contention that the officer's request for permission to search the vehicle did not transform the stop into an unlawful one. We conclude that the facts of *Gaulrapp* are distinguishable from those before us; nonetheless, *Gaulrapp's* legal analysis supports suppression under the totality of the circumstances presented here. Furthermore, the circuit court properly applied *State v. Jones*, 2005 WI App 26, 278 Wis. 2d 774, 693 N.W.2d 104, *review denied*, 2005 WI 134, 282 Wis. 2d 720, 700 N.W.2d 272 (2003AP3216–CR), to ascertain whether Luebeck's consent to search was given while he was illegally seized. Accordingly, we affirm the orders of the circuit court.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2.   While on patrol on May 29, 2004, Mequon Police Officer Darren Selk observed a vehicle that deviated from its lane several times. Selk stopped the vehicle at about 2:18 a.m. and identified the driver as Luebeck. Selk detected an odor of intoxicants, and Luebeck stated that he was coming from a bar. Selk asked for identification from Luebeck and his passenger, and both produced their driver's licenses. Selk returned to his squad car with the licenses to check that both Luebeck and his passenger were "valid to drive and that there were no warrants for either one." Dispatch reported back to Selk at approximately 2:23 a.m., informing him that both parties were valid drivers and neither had any outstanding warrants.

¶ 3.   Selk then approached Luebeck and asked him to exit his vehicle. Selk explained that because he had smelled the odor of intoxicants and Luebeck admitted he

752

had been at a bar, Selk was going to perform field sobriety tests. Selk had Luebeck perform the horizontal gaze nystagmus test, the walk-and-turn test, and the one-legged stand test. The tests took approximately ten to twelve minutes, and Luebeck performed each test satisfactorily. Selk then administered a preliminary breath test, which produced a result of .02 percent, well below the level of impermissible intoxication in Wisconsin. At that point, Selk determined that he would not arrest Luebeck for operating a motor vehicle while intoxicated. Selk advised Luebeck that he was going to issue him a warning for the lane deviation and then release him.

¶ 4.  Selk decided that he wanted Luebeck's passenger to take a preliminary breath test because Luebeck indicated that she had less to drink than he had. Selk explained that he would prefer someone with no alcohol or less alcohol to drive the vehicle. Luebeck indicated he had no problem with this. Before approaching the passenger, Selk asked Luebeck if he had anything illegal on his person. Luebeck said he did not. Selk asked permission to search Luebeck; Luebeck agreed and raised his arms over his head. The search produced nothing illegal. Selk then asked Luebeck if there was anything illegal in his vehicle, and Luebeck said there was not. Selk asked if he could search the vehicle and Luebeck responded, "Go ahead." Selk walked around the vehicle to talk to the passenger at approximately 2:38 a.m. After a brief search of Luebeck's passenger, Selk began his search of the vehicle.

¶ 5.  Selk's search of the vehicle included two parts. First, at about 2:39 a.m., he began a search that uncovered a baggie of marijuana under the gearshift housing. Luebeck admitted that the substance was marijuana, and at approximately 2:41 a.m., Selk placed

Luebeck under arrest. Selk then returned to complete the search of Luebeck's vehicle.

¶ 6. The State charged Luebeck with one count of possession of marijuana, second offense, contrary to WIS. STAT. § 961.41(3g)(e) (2003–04).[1] Luebeck pled not guilty and subsequently moved for suppression of the evidence found in his vehicle. Following a hearing, the circuit court granted Luebeck's motion to suppress by written order dated March 2, 2005. The State then filed a motion to supplement the record with further testimony. On May 23, Selk provided testimony about the precise timing of the events surrounding Luebeck's arrest. On June 23, the circuit court reaffirmed its prior ruling and subsequently filed a second written order suppressing the evidence. The State appeals from both the March 2, 2005 order for suppression and the subsequent order affirming the prior ruling.[2]

## DISCUSSION

■■■

¶ 7.    Warrantless searches are per se unreasonable under the Fourth Amendment; however, certain "spe-

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

[2] The State filed a notice of appeal on April 15, 2005, claiming that the circuit court's March 2, 2005 order suppressing the evidence was error. On April 19, the State filed a motion asking the court of appeals to remand the matter to the circuit court to allow for a hearing on its motion to supplement the record. We granted the State's motion and, on remand, the circuit court entered an order reaffirming its original ruling. The State now appeals from both orders of the circuit court. If an appellate court remands to the circuit court under WIS. STAT. § 808.075(5), the appellate court, in the pending appeal, may include the postremand order in its review. See § 808.075(8).

cifically established and well-delineated" exceptions to the warrant requirement exist, including searches conducted pursuant to voluntarily given consent. *See State v. Williams*, 2002 WI 94, ¶ 18, 255 Wis. 2d 1, 646 N.W.2d 834 (citation omitted). A search authorized by consent is wholly valid unless that consent is given while an individual is illegally seized. *See id.*, ¶¶ 19–20. The test used to determine if a person is being seized is whether, considering the totality of the circumstances, a reasonable person would have believed he or she was free to leave or otherwise terminate the encounter. *See State v. Griffith*, 2000 WI 72, ¶¶ 39, 41, 236 Wis. 2d 48, 613 N.W.2d 72; *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Here, the validity of the initial traffic stop is not at issue. The question presented on appeal is limited to whether Luebeck was still seized within the meaning of the Fourth Amendment when he gave his consent to the search of his vehicle.

¶ 8. "When a Fourth Amendment challenge is raised at the trial court level, the trial court considers the evidence, makes findings of evidentiary or historical fact, and then resolves the issue by applying constitutional principles to those historical facts." *Griffith*, 236 Wis. 2d 48, ¶ 23. "On review, this court gives deference to the trial court's findings of evidentiary or historical fact, but determines the question of constitutional fact independently." *Id.* Thus, whether Luebeck was still seized within the meaning of the Fourth Amendment at the time he gave his consent presents a question of constitutional fact that we review de novo. *See Williams*, 255 Wis. 2d 1, ¶ 17.

¶ 9. The State frames the discussion in terms of a law enforcement officer's ability to ask questions unrelated to the original purpose of the traffic stop. It argues

that, under *Gaulrapp*, one or two consent questions that do not unreasonably extend the traffic stop in scope or duration are permissible. The State points to the circuit court's oral ruling on February 24, 2005, wherein the court determined that Selk had not engaged in a "display of force" and that Luebeck "could have refused his consent [to the search] under the circumstances as they then existed." Consequently, the State posits, we should hold that the search was legal because Luebeck's consent was voluntarily given.

¶ 10.   We agree with the State that not every interaction between the police and the public involves a "stop" or a "seizure," and voluntary interaction between the police and citizens gives no rise to Fourth Amendment concerns. An officer is entitled to question someone as long as the questions, the circumstances and the officer's behavior do not convey that compliance with the requests is required. *Bostick*, 501 U.S. at 435–36. The person questioned, of course, need not answer and, as long as he or she remains free to walk away, there has been no intrusion on liberty requiring a particularized and objective justification under the Fourth Amendment. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *Williams*, 255 Wis. 2d 1, ¶¶ 21–22. The United States Supreme Court explained that "[s]o long as a reasonable person would feel free to disregard the police and go about his [or her] business, the encounter is consensual and no reasonable suspicion is required [to prolong the detention]." *Bostick*, 501 U.S. at 434 (citation omitted).

¶ 11.   The State's primary argument on appeal is that the circuit court failed to apply *Gaulrapp* when suppressing the evidence obtained by Selk's search of Luebeck's vehicle. Gaulrapp was stopped for a muffler

violation and the law enforcement officers on the scene asked whether he had any drugs or weapons inside of his car. *Gaulrapp*, 207 Wis. 2d at 603. Gaulrapp said he did not, at which point the officers asked whether they could search his person and his vehicle for any contraband. Gaulrapp consented and the officers subsequently found drug material on Gaulrapp and in his vehicle. *Id.* at 603–04. Gaulrapp argued that the drug evidence should be suppressed because the police had illegally expanded the scope of the permissive traffic detention by asking about drugs and weapons and for permission to search his person and vehicle. *Id.* at 605–08. Citing *Ohio v. Robinette*, 519 U.S. 33 (1996), we held that the police had acted properly in asking to search Gaulrapp's person and vehicle during the routine traffic stop. *Gaulrapp*, 207 Wis. 2d at 607–08.

¶ 12. Luebeck argues that *Gaulrapp* is distinguishable from his own case and we agree. Though *Gaulrapp* addressed a traffic stop that resulted in a valid vehicle search, Gualrapp's argument focused on the subject of the questions asked by the police officers during the traffic stop. *Id.* at 609. There, we explained that "When there is justification for a [*Terry v. Ohio*, 392 U.S. 1 (1968)] stop, it is the extension of a detention past the point reasonably justified by the initial stop, not the nature of the questions asked, that violates the Fourth Amendment." *Gaulrapp*, 207 Wis. 2d at 609. We concluded that a seizure does not take place when police merely ask questions of an individual or ask to search his or her person or vehicle, so long as the police do not convey that compliance with the request to search is required. *Id.* Ultimately, *Gaulrapp* is distinguishable, but the legal analysis informs our conclusion here. Specifically, where the voluntariness of consent to

search is at issue, "the Fourth Amendment's touchstone is reasonableness, which is measured in objective terms by examining the totality of the circumstances." *Id.* at 607.

¶ 13. The State questions, and Luebeck defends, the circuit court's application of the *Jones* case. In *Jones*, sheriff's deputy Multer initiated a valid traffic stop of a speeding vehicle with two occupants. *Jones*, 278 Wis. 2d 774, ¶ 2. A routine check of identification provided by the driver, O'Neal, and the passenger, Jones, did not reveal anything irregular or suspicious about them. *Id.*, ¶¶ 2–3. Multer wrote a warning to O'Neal and asked him to step out of the car and accompany him to the rear of the vehicle. *Id.*, ¶ 3. O'Neal complied and Multer explained the warning to him. Multer then returned both identification cards to O'Neal. *Id.* Multer asked O'Neal if he had any further questions regarding the citation and O'Neal indicated that he did not. *Id.*, ¶ 4. Just seconds later, Multer asked O'Neal whether there was anything illegal in the vehicle. *Id.* O'Neal responded that there was not, and Multer asked if O'Neal would consent to a search of the vehicle.[3] *Id.*

¶ 14. We stated that "a search authorized by consent is wholly valid unless that consent is given while an individual is illegally seized." *Id.*, ¶ 9. We made clear that, for purposes of the Fourth Amendment, we must *apply an objective test as to whether, under the totality of the circumstances, a reasonable person would have believed that he or she was not free to leave. Id.* Applying that test here in its decision reaffirming the

---

[3] This technique, formerly referred to as a "Badger," is a process by which the officer attempts to obtain the person's consent to a search even though the officer has no legal basis to further detain the person. *See State v. Williams*, 2002 WI 94, ¶ 7, 255 Wis. 2d 1, 646 N.W.2d 834.

order granting Luebeck's motion to suppress the evidence, the circuit court stated:

> I don't think any reasonable person would have felt that this encounter had concluded and that he was free to leave. I think any reasonable person, when a police officer is holding his driver's license, had not told him he's free to leave, and was questioning him about his passenger's state of sobriety would not have felt that this encounter had ended.
>
> For purposes of the Fourth Amendment, I'm satisfied that a seizure of this person had occurred. I think it's controlled by *State vs. Jones*, similar to [*Williams*] obviously.

¶ 15.   We agree with the circuit court's application of the *Jones* analysis and with the court's conclusion that a reasonable person in Luebeck's position would not have felt free to decline the officer's search request and simply get on his or her way. Unlike the complainants in *Gaulrapp* and *Williams*, Luebeck was detained for over twenty minutes, his driver's license was held by the police, no citation or warning for lane deviation had yet been issued, he passed all of the field sobriety tests and his preliminary breath test indicated a blood alcohol content below the legal limit, and yet he was being questioned about his passenger's ability to drive in his place. In *Williams*, the officer issued and explained the traffic warning, returned Williams' identification, shook hands with Williams, and said, "[W]e'll let you get on your way then." *Williams*, 255 Wis. 2d 1, ¶¶ 7–12. In *Gaulrapp*, we expressly distinguished the case from others that "involve prolonged detention after the officers concluded or should have concluded that the justification for the initial stop did not warrant further detention." *Gaulrapp*, 207 Wis. 2d at 608.

¶ 16. Interestingly, the Tenth Circuit Court of Appeals has long held that a motorist's consent to search his or her vehicle is invalid where a deputy does not return documents relating to the initial traffic stop prior to asking for consent to search the vehicle. See, *e.g., United States v. Lee*, 73 F.3d 1034, 1040 (10th Cir. 1996) (an encounter that begins with a valid traffic stop may not be deemed consensual unless the driver's documents have been returned), *overruled on other grounds by United States v. Holt*, 264 F.3d 1215, 1226 n.6 (10th Cir. 2001); *United States v. Lambert*, 46 F.3d 1064, 1068 (10th Cir. 1995) (where an officer does not return documents to the driver, the driver will not reasonably feel "free to leave or otherwise terminate the encounter"); *United States v. Walker*, 933 F.2d 812, 817 (10th Cir. 1991) (detention was a seizure and Walker was not free to leave where officer retained his driver's license and registration during the entire time of questioning), *cert. denied*, 502 U.S. 1093 (1992). We are persuaded that, in a traffic stop context, where the test is whether a reasonable person would feel free to "disregard the police and go about his [or her] business," *Bostick*, 501 U.S. at 434 (citation omitted), the fact that the person's driver's license or other official documents are retained by the officer is a key factor in assessing whether the person is "seized" and, therefore, whether consent is voluntary.

¶ 17. Under the totality of the circumstances presented here, we conclude that Luebeck, or any reasonable person in Luebeck's position, would have believed that he or she was not free to leave or terminate the encounter with the officers. Consequently, Luebeck's consent to search was tainted by the illegal seizure. *See Jones*, 278 Wis. 2d 774, ¶ 9.

## CONCLUSION

¶ 18.   The touchstone of the Fourth Amendment's protection against illegal search and seizure is reasonableness, which is measured in objective terms under the totality of the circumstances. *Gaulrapp*, 207 Wis. 2d at 607. The evidence here supports the circuit court's determination that an illegal seizure occurred and thus Luebeck's consent to search was invalid. The March 2, 2005 order for suppression of the evidence, together with the July 11, 2005 order reaffirming suppression, are affirmed.

*By the Court.*—Orders affirmed.