# COURT OF APPEALS
# DECISION
# DATED AND FILED

## June 5, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2023AP1813**
**2023AP1814**

Cir. Ct. Nos. 2021TR1950
2021TR1951

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

CITY OF HARTFORD,

    PLAINTIFF-RESPONDENT,

  V.

EDWARD H. WHITE,

    DEFENDANT-APPELLANT.

---

APPEALS from judgments of the circuit court for Washington County: SANDRA J. GIERNOTH, Judge. *Affirmed in part; reversed in part and cause remanded with directions.*

¶1 LAZAR, J.[1] Edward H. White appeals from judgments of conviction entered by the trial court finding him guilty of operating a motor vehicle while under the influence of an intoxicant (OUI) and of operating a motor vehicle with a prohibited alcohol concentration (PAC), contrary to WIS. STAT. § 346.63(1)(a) and (b). White argues that he was under constructive arrest when he was stopped by police after crossing a center line and making an illegal U-turn, and that the police officers were not allowed to conduct warrantless standardized field sobriety tests after that arrest under the Fourth Amendment.[2] The City of Hartford asserts that there was no arrest (constructive or otherwise) until the completion of the traffic stop, so there was no arguable violation of White's constitutional rights when police conducted field sobriety tests. For the reasons that follow, this court concludes that White was not under constructive arrest and that none of his constitutional rights were violated. Thus, the trial court did not err in denying White's pretrial motions to suppress evidence.

¶2 This decision also addresses an issue not raised by the parties: judgments of conviction were entered for both charges despite the statutory requirement that there can be only one conviction when a defendant is charged with both OUI and PAC for the same event. *See* WIS. STAT. § 346.63(1)(c). Therefore, this court will reverse the OUI judgment and remand that case with directions that it be dismissed.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] U.S. CONST. amend. IV. In the Wisconsin Constitution, Article I, section 11 is substantively identical. *State v. Richter*, 2000 WI 58, ¶27, 235 Wis. 2d 524, 612 N.W.2d 29.

**BACKGROUND**

¶3      The following facts are taken from testimony at the January 24, 2022 evidentiary hearing regarding White's pretrial motions to suppress evidence. Officer Kali Reiman was on patrol with her trainee, Officer J. Knudson, when they observed White's vehicle making an illegal U-turn at about 2:00 a.m. on June 24, 2021.  The officers followed the vehicle and observed it commit two "left-of-center violations" before attempting to stop it.  The vehicle did not immediately pull over after Knudson activated his emergency lights, nor did it pull over when the officers turned on their siren and honked their horn; it continued on. Eventually, it did turn into a subdivision and stopped in front of a garage door.

¶4      Because the vehicle had not stopped right away, the officers used a protocol for a "high-risk stop."  They parked behind the vehicle, opened their doors, and used a public announcement (PA) system to command White—the driver of the vehicle—to show his hands, open the vehicle's door, and get out, all of which he did.  The officers repeated their instruction for White to show his hands and to raise them over his head, and White again complied.  When Reiman approached and asked White why he did not stop the vehicle sooner, he responded that he "was looking for a safe place to pull over," an explanation she accepted. Reiman asked White where his wallet was, and she "grabbed it" from his back pocket.

¶5      Reiman smelled the odor of an intoxicant and noticed that White had red, bloodshot eyes and slow, slurred speech.  When Reiman asked whether he had had anything to drink, White admitted that he had consumed five drinks.  Reiman then asked White to perform field sobriety tests, and he agreed.  Before Knudson

conducted these tests, another marked squad car containing an additional officer and trainee arrived on the scene. They did not participate in the investigation in any way but observed from a distance. No weapons were drawn by any of the four officers present. Reiman (or another officer) held White's wallet while the field sobriety tests were being conducted.

¶6 White performed poorly on the field sobriety tests and was placed under arrest for operating a vehicle under the influence. One of his pre-trial motions sought suppression of the field sobriety tests based on the assertion that he was "in formal custody at the time the field sobriety tests were administered." In an April 8, 2022 oral ruling, the trial court denied White's motions and found that he was not in custody when the standardized field sobriety tests were undertaken:

> Here the Court concludes that Mr. White was in custody after the preliminary breath test was administered when he was advised by the officers that he was under arrest and placed in handcuffs.
>
> The Court finds that prior to that point in time, he was certainly detained consistent with a Terry investigative stop but was not under arrest.
>
> In reaching this conclusion, I consider the totality of the circumstances. While there were four officers present prior to the administration of the field sobriety tests, two were clearly in a standby or observation status. Those two had no meaningful involvement in the investigation or detention of Mr. White.
>
> Additionally, while features of a high risk traffic stop were used by officers at the inception of the traffic stop, including the use of the PA system, the orders given, etcetera, those—those tactics were quickly ended, they quickly dissipated after officers' initial contact with the defendant and what proceeded thereafter involved no heightened restraint or methods for the Terry stop.

4

The Court concludes that the degree of restraint involved prior to the officers' oral advisement of arrest and use of handcuffs is not such that a reasonable person in the defendant's position would consider him or herself under formal arrest. Taken as a whole, the Court finds the defendant was arrested when he, in fact, was placed in handcuffs, orally advised he was under arrest following administration of the preliminary breath test.

¶7 White appeals, renewing his argument that the field sobriety tests violated his Fourth Amendment rights.

## DISCUSSION

¶8 The purpose of the Fourth Amendment (and the corresponding Wisconsin constitutional provision) "is to safeguard individuals' privacy and security against arbitrary governmental invasions, which requires striking a balance between the intrusion on an individual's privacy and the government's promotion of its legitimate interests." *State v. Sykes*, 2005 WI 48, ¶13, 279 Wis. 2d 742, 695 N.W.2d 277. The Fourth Amendment is applicable to and binding upon the states. *State v. Koch*, 175 Wis. 2d 684, 700, 499 N.W.2d 152 (1993). Generally, the Fourth Amendment protects people from being compelled to expose evidence not "exposed to the public at large." *See United States v. Dionisio*, 410 U.S. 1, 14 (1973).

¶9 White contends that under *Dionisio*, a warrant is required when seeking to obtain evidence that is not exposed to the general public after an arrest; though he concedes it is not "directly on point" with his contention, he asserts, quoting *Dionisio*, that "Fourth Amendment concerns **are heightened** in circumstances of arrest as opposed to grand jury subpoena because an arrest is 'abrupt, is effected with force or the threat of it and often in demeaning

circumstances, and … results in a record involving social stigma.'" *Id.* at 10. Thus, he says, the officers' field sobriety testing was a Fourth Amendment violation because this testing occurred while he was under constructive arrest and constituted compelled production of physical evidence of impairment without a warrant.[3] He then relies upon *State v. Anker*, 2014 WI App 107, 357 Wis. 2d 565, 855 N.W.2d 483, to argue that a constructive arrest occurred when he was pulled over and stopped his car in front of a garage.

¶10     The City disputes that a warrant is required to administer field sobriety tests either pre or postarrest so long as reasonable suspicion exists. Nevertheless, to the extent that arrest status is relevant, it agrees that *Anker* is the proper starting point for analysis but contends that White was not under arrest when his field sobriety tests were conducted and, accordingly, the convictions should stand.   This court agrees with the City that White was not under constructive arrest prior to his formal arrest, so there was no arguable violation of his Fourth Amendment rights.

---

[3] White criticizes an unpublished opinion by this court, *State v. Paul*, No. 2022AP464-CR, unpublished op. and order at 3 (WI App Oct. 4, 2023), which held that a postarrest investigation regarding a separate possible offense did not violate the defendant's constitutional rights. As an unpublished summary disposition order, *Paul* has no precedential value and cannot be cited for its persuasive value. *See* WIS. STAT. RULE 809.23(3)(a), (b). Unlike this appeal, it involved an initial arrest on an unrelated charge (attempting to flee or elude an officer). *Id.* at 3. Following that arrest and a transport to the police station, officers noticed an odor of intoxicants on Paul's breath, which led to the initiation of a new investigation regarding a second possible offense (operating a vehicle while under the influence). *Id.*

## I.      Standard of Review

¶11      The issue on appeal centers upon constitutional rights, and, as such, it is subject to a two-step process of review. *See State v. Dalton*, 2018 WI 85, ¶33, 383 Wis. 2d 147, 914 N.W.2d 120; *State v. Tullberg*, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120. First, this court will uphold a trial court's findings of fact unless they are clearly erroneous. *State v. Hughes*, 2000 WI 24, ¶15, 233 Wis. 2d 280, 607 N.W.2d 621 (citing *State v. Secrist*, 224 Wis. 2d 201, 207, 589 N.W.2d 387 (1999)). Second, this court applies the law to those facts de novo. *See Dalton*, 383 Wis. 2d 147, ¶33. This process requires courts to "analyze issues of constitutional fact" by "on one hand giving deference to the [trial] court's findings of evidentiary fact, and on the other reviewing independently the [trial] court's application of those facts to constitutional standards." *State v. Malone*, 2004 WI 108, ¶14, 274 Wis. 2d 540, 683 N.W.2d 1.

## II.      There was no constructive arrest of White.

¶12      As the *Anker* court explained:

> "[T]he distinction between an arrest and an investigatory stop is not of easy delineation." *Wendricks v. State*, 72 Wis. 2d 717, 723, 242 N.W.2d 187 (1976). Factual context is critical. *Id.* at 723-24. "The standard used to determine the moment of arrest is whether a reasonable person in the defendant's position would have considered himself or herself to be 'in custody,' given the degree of restraint under the circumstances." *State v. Kiekhefer*, 212 Wis. 2d 460, 485, 569 N.W.2d 316 (Ct. App. 1997).

*Anker*, 357 Wis. 2d 565, ¶15.

¶13      White contends that he was in custody and, thus, constructively arrested before the administration of the field sobriety tests. "Custody means 'a

formal arrest or restraint on freedom of movement of the degree associated with formal arrest.'" **State v. Quigley**, 2016 WI App 53, ¶32, 370 Wis. 2d 702, 883 N.W.2d 139 (citation omitted). Courts will look at the totality of the circumstances when considering "whether a reasonable person in the suspect's position would have considered himself or herself to be in custody." **State v. Lonkoski**, 2013 WI 30, ¶27, 346 Wis. 2d 523, 828 N.W.2d 552 (citation omitted). In particular, this court is to consider "the degree of restraint; the purpose, place, and length of the interrogation; and what has been communicated by police officers." **State v. Bartelt**, 2018 WI 16, ¶32, 379 Wis. 2d 588, 906 N.W.2d 684. Courts are to consider the following with regard to the degree of restraint: "whether the suspect is handcuffed, whether a weapon is drawn, whether a frisk is performed, the manner in which the suspect is restrained, whether the suspect is moved to another location, whether questioning took place in a police vehicle, and the number of officers involved." **State v. Morgan**, 2002 WI App 124, ¶12, 254 Wis. 2d 602, 648 N.W.2d 23.

¶14 White points to several of these factors that he says establish a constructive arrest. First, White complains that four officers were present during his traffic stop. However, the first two officers on the scene (the ones who witnessed the illegal driving maneuvers) were Officer Reiman and an officer in training (Officer Knudson) who was riding in the same vehicle as Reiman. The other two police officers (including another trainee) arrived in a single car after White had already exited his vehicle and did not participate in the investigation; they merely observed. Their presence alone did not constitute an excessive police presence that would convert an ordinary traffic stop into a constructive arrest. The officers did not swarm about White; two took the lead while the others held back.

*See **State v. Gruen***, 218 Wis. 2d 581, 595-96, 582 N.W.2d 728 (Ct. App. 1998) (referencing foreign opinions in which courts used presence of at least seven police officers to support the conclusion that defendants were under arrest in the *Miranda*[4] context); *see also **State v. Stankus***, 220 Wis. 2d 232, 239-41, 582 N.W.2d 468 (Ct. App. 1998) (concluding that a search was voluntary and not coercive when both a sergeant and a police chief approached defendant's car).

¶15     Next, White notes the "high-risk" protocols used in the stop. Although he says that this led to "atypical" commands and characteristics as compared to a "conventional" encounter, he does not explain how they converted the traffic stop to a constructive arrest. Once White explained that he only failed to pull over immediately to get to a safe place, Officer Reiman accepted that explanation, and the tension in the situation, if any, de-escalated.

¶16     While some of the commands and procedures employed in White's stop are not standard operating practice, they were used because White took additional time to get out of his car (after driving in disregard of lights, siren, and horn). Clearly understandable as the United States Supreme Court has long recognized that "[t]raffic stops are 'especially fraught with danger to police officers.'" ***Rodriquez v. United States***, 575 U.S. 348, 356 (2015) (quoting ***Arizona v. Johnson***, 555 U.S. 323, 330 (2009)); *see also **State v. Floyd***, 2017 WI 78, 377 Wis. 2d 394, 898 N.W.2d 560. It is understandable that the involved officers took a cautious approach. But, their conduct does not constitute a constructive arrest where White was more compelled to stay and engage with

---

[4] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

them than in a routine traffic stop; no weapons were drawn, no handcuffs were used, White was not frisked, and White was not moved to another location or placed into a police vehicle before his formal arrest.

¶17 Finally, White contends that the fact that the officers removed his wallet from his back pocket and held it while they conducted the field sobriety tests supports a conclusion that he was under constructive arrest. He cites *State v. Luebeck*, 2006 WI App 87, ¶15, 292 Wis. 2d 748, 715 N.W.2d 639, a case in which a warrantless search was held to violate the defendant's Fourth Amendment rights when it was conducted after the defendant "was detained for over twenty minutes, his driver's license was held by the police, no citation or warning for lane deviation had yet been issued, he passed all of the field sobriety tests and his preliminary breath test indicated a blood alcohol content below the legal limit." Under those circumstances, an illegal seizure occurred because the search was not reasonable under the totality of the circumstances. *See id.*, ¶¶17-18.

¶18 The facts of White's case are different. Reiman took White's wallet from his back pocket early in the "high-risk" stop as a safety precaution because she "didn't know what was in his pockets at the time." Once she began to speak to White, Reiman immediately detected the odor of intoxicants and observed his red, blood-shot eyes and slow, slurred speech.[5] White also admitted that he had consumed five drinks. Taking all of that together, along with the fact that it was

---

[5] These have been held to be indicia of intoxication relevant to reasonable suspicion or probable cause analyses. *See State v. Tullberg*, 2014 WI 134, ¶35, 359 Wis. 2d 421, 857 N.W.2d 120 (bloodshot and glassy eyes); *State v. Kasian*, 207 Wis. 2d 611, 622, 558 N.W.2d 687 (Ct. App. 1996) (odor of intoxicants and slurred speech); *State v. Wille*, 185 Wis. 2d 673, 684, 518 N.W.2d 325 (Ct. App. 1994) (odor of intoxicants).

the dead of night, the officers in White's case were more reasonable in holding the wallet than those in Luebeck's case, where they held the license even *after* the impaired driving investigation was concluded and no reasonable suspicion existed. *See id.*, 292 Wis. 2d 748, ¶15. At best, as the City acknowledges, this factor weighs in favor of constructive arrest but is not enough to convert White's traffic stop from a *Terry*[6] detention into an arrest that could arguably implicate White's Fourth Amendment rights.

¶19 When this court adds up all the evidence and affords each its due weight, it simply does not lead to the conclusion that White was under constructive arrest before field sobriety tests were conducted. No reasonable person would have assumed they were under arrest and required to comply with the officers' requests in these circumstances. Thus, there was no arguable violation of White's constitutional rights, even under his legal theory.

---

[6] *Terry v. Ohio*, 392 U.S. 1, 27 (1968); *see also* *State v. Young*, 2006 WI 98, ¶20, 294 Wis. 2d 1, 717 N.W.2d 729:

> [A]n investigatory or *Terry* stop[] usually involves only temporary questioning and thus constitutes only a minor infringement on personal liberty. An investigatory stop is constitutional if the police have reasonable suspicion that a crime has been committed, is being committed, or is about to be committed. *State v. Waldner*, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996). An investigatory stop, though a seizure, allows police officers to briefly "detain a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *Id.* at 55.

### III.    White cannot be convicted of both OUI and PAC.

¶20    Finally, this court turns to the issue concerning the entry of two convictions for the same event.  It is not clear from the Record why judgments of conviction were entered in both the OUI and PAC cases; WIS. STAT. § 346.63(1)(c) provides that if a person is found guilty of both offenses based on the same incident, "there shall be a single conviction for purposes of sentencing and for purposes of counting convictions."  *See Town of Menasha v. Bastian*, 178 Wis. 2d 191, 195, 503 N.W.2d 382 (Ct. App. 1993) (interpreting the single-conviction provision to mean that a person found guilty of both charges "is to be sentenced on one of the charges, and the other charge is to be dismissed").  Accordingly, White's conviction for PAC (Case No. 2023AP1814), the conviction for which he received a penalty, is affirmed.  White's conviction for OUI (Case No. 2023AP1813) is reversed and remanded with directions to the trial court to dismiss that charge.

### CONCLUSION

¶21    This court concludes that the trial court correctly determined that there was no constructive arrest of White, and because he was not in custody when asked to perform standardized field sobriety tests, there is no basis upon which to overturn that court's order denying White's motion to suppress evidence.  Next, because White cannot be convicted of both OUI and PAC pursuant to WIS. STAT. § 346.63(1)(c), this court affirms White's conviction for PAC (Case No. 2023AP1814), but reverses White's conviction for OUI (Case No. 2023AP1813) and remands with directions to the trial court to dismiss that charge.

*By the Court.*—Judgments affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.