COURT OF APPEALS
DECISION
DATED AND FILED

February 18, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2023AP234-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021CT64

**IN COURT OF APPEALS
DISTRICT III**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

EMILY ANNE ERTL,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Oneida County: MARY ROTH BURNS, Judge. *Affirmed.*

¶1 HRUZ, J.[1] Emily Anne Ertl appeals a judgment convicting her, pursuant to a no-contest plea, of operating a motor vehicle with a prohibited alcohol concentration (PAC), as a second offense. Ertl argues that the circuit court erred by denying her motion to suppress evidence on the ground that law enforcement

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

impermissibly extended the scope of her initial detention for "inattentive driving." Specifically, she contends that the court misapplied this court's decision in *State v. Gaulrapp*, 207 Wis. 2d 600, 558 N.W.2d 696 (Ct. App. 1996), to the facts of her case. We conclude that *Gaulrapp*'s holding is applicable and that Ertl's detention was not unreasonably prolonged by law enforcement's single request that she voluntarily submit to field sobriety tests. Accordingly, we reject Ertl's arguments and affirm.

## BACKGROUND

¶2 On May 19, 2021, at approximately 7:33 p.m., Officer Alex Schmidt, with the Minocqua Police Department, received a dispatch communication from an anonymous caller reporting "a reckless driver heading south on U.S. Highway 51 coming into the town of Minocqua." The caller provided the vehicle's license plate, make, model, and color and "advised that the driver pulled into the McDonald's in the town of Minocqua." Schmidt was able to locate the vehicle, later found to be driven by Ertl, in the McDonald's drive-through lane. After the vehicle left McDonald's, Schmidt followed Ertl for a period of time, and he "observed [her] vehicle cross the center yellow median once," "observed the vehicle cross into the other lane once," "and then the vehicle began to straddle the white traffic lane separating the two [southbound] lanes."

¶3 Ultimately, Officer Schmidt executed a traffic stop on Ertl's vehicle. *See State v. Houghton*, 2015 WI 79, ¶30, 364 Wis. 2d 234, 868 N.W.2d 143 (holding that "reasonable suspicion that a traffic law has been or is being violated is sufficient to justify all traffic stops"). According to Schmidt's testimony, when he first encountered Ertl, he did not note any signs of intoxication. Schmidt told Ertl that the reason he stopped her was because she had been swerving her vehicle on

the road and that law enforcement had also received a complaint that she had been swerving. He then inquired whether Ertl had been drinking, and Ertl said, "No." Nevertheless, Schmidt asked Ertl if she would "be willing to do standardized field sobriety tests for me." Ertl consented. Her consent occurred within approximately one minute of Schmidt beginning his discussion with Ertl. When Ertl exited the vehicle, Schmidt noted "a strong odor of alcohol coming from her person." Schmidt also observed that Ertl had slurred speech and "glossy," bloodshot eyes.

¶4      Officer Schmidt had Ertl perform the horizontal gaze nystagmus test, the vertical gaze nystagmus test, the walk-and-turn test, and the one-leg stand test, all of which revealed multiple clues of intoxication. Schmidt also asked Ertl to submit to a preliminary breath test (PBT), to which she eventually agreed. The result of the PBT was a .19 blood alcohol concentration (BAC). Schmidt then placed Ertl under arrest for operating a motor vehicle while intoxicated (OWI), as a second offense.

¶5      Ertl was charged in Oneida County with OWI and PAC, both as second offenses. Ertl filed several pretrial motions to suppress evidence, raising five distinct challenges to the traffic stop. The circuit court held an evidentiary hearing on Ertl's motions. At that hearing, Officer Schmidt was the sole testifying witness.[2]

---

[2] Ertl explains that during the hearing on the motions, Officer Schmidt's testimony revealed an "unforeseen issue" related to Schmidt's request that Ertl exit the vehicle. With the circuit court's permission, Ertl then filed a supplemental brief, moving for suppression on the ground that Schmidt impermissibly extended the scope of Ertl's initial detention—i.e., the issue addressed in this appeal.

¶6      The circuit court issued a written decision, granting suppression of certain evidence based on one of Ertl's motions and denying the rest.[3]  Relevant to the issue on appeal, the court concluded that "Officer Schmidt's questioning and request for [Ertl] to perform field sobriety testing did not impermissibly extend the stop."  The court stated that "[t]he instant case is analogous to *Gaulrapp*," reasoning that "the amount of time that [the] investigation took was … modest" and that Schmidt's request for Ertl to conduct field sobriety tests was "not, in itself, an unreasonable extension of the stop, any more than requesting to search the driver's vehicle in *Gaulrapp*."  The court concluded that because Ertl consented to perform the tests, "the extension caused by that testing was consented to by" Ertl.  The court, therefore, denied Ertl's motion to suppress evidence on this basis.

¶7      Thereafter, Ertl entered a no-contest plea to the PAC charge, and the circuit court found her guilty.  Ertl now appeals.[4]

## DISCUSSION

¶8      On appeal Ertl argues that Officer Schmidt impermissibly extended the scope of her traffic stop, and she challenges the circuit court's denial of her motion to suppress evidence on the basis that the court failed to properly apply precedential Fourth Amendment case law.[5]  When reviewing a motion to suppress,

---

[3]  The Honorable Patrick O'Melia entered the order on Ertl's motions to suppress.  After Judge O'Melia's retirement, the Honorable Mary Roth Burns was assigned to the case.

[4]  Our review of an order denying a motion to suppress evidence is preserved notwithstanding Ertl's no-contest plea.  *See* WIS. STAT. § 971.31(10).

[5]  The Fourth Amendment provides:

whether law enforcement's conduct violated the constitutional guarantee against unreasonable searches and seizures is a question of constitutional fact. ***State v. Griffith***, 2000 WI 72, ¶23, 236 Wis. 2d 48, 613 N.W.2d 72. We give deference to the circuit court's findings of evidentiary or historical fact, upholding the court's findings unless they are clearly erroneous. ***Id.***; ***City of Sheboygan v. Cesar***, 2010 WI App 170, ¶10, 330 Wis. 2d 760, 796 N.W.2d 429. We independently determine whether those facts constitute a violation of the Fourth Amendment. ***Cesar***, 330 Wis. 2d 760, ¶10.

¶9       "The temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the Fourth Amendment." ***Gaulrapp***, 207 Wis. 2d at 605; *see also* ***State v. Gammons***, 2001 WI App 36, ¶6, 241 Wis. 2d 296, 625 N.W.2d 623 (stating that when conducting an investigatory stop, law enforcement "must have a reasonable suspicion, grounded in specific articulable facts and reasonable inferences from those facts, that an individual is violating the law"). Here, Ertl does not challenge the validity of the initial traffic stop.

¶10       Instead, Ertl argues that Officer Schmidt impermissibly extended the scope of the traffic stop by requesting that Ertl consent to perform field sobriety

---

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Historically, Wisconsin courts have interpreted article I, section 11 of the Wisconsin Constitution consistent with the United States Supreme Court's interpretation of the Fourth Amendment. *E.g.*, ***State v. Malone***, 2004 WI 108, ¶15, 274 Wis. 2d 540, 683 N.W.2d 1.

tests. "A traffic stop can become unlawful if it is prolonged beyond the time reasonably required to effectuate its purpose." *State v. Crone*, 2021 WI App 29, ¶10, 398 Wis. 2d 244, 961 N.W.2d 97. "After a stop is made, an officer may expand the scope of inquiry only to investigate 'additional suspicious factors' that come to the officer's attention." *Id.* (citation omitted).

¶11 As previously noted, the circuit court relied on this court's decision in *Gaulrapp* to support the propriety of Officer Schmidt's conduct in this case. In *Gaulrapp*, law enforcement conducted a traffic stop of Gaulrapp's vehicle for a loud muffler. *Gaulrapp*, 207 Wis. 2d at 603. After asking where Gaulrapp was coming from and whether he had any drugs or weapons in his vehicle, law enforcement asked Gaulrapp if they could search his vehicle and then also "asked for permission to search his person for any contraband or weapons." *Id.* Gaulrapp voluntarily consented to both searches, and law enforcement discovered drugs during the search. *Id.* at 603-04.

¶12 Gaulrapp argued on appeal "that the very asking of the first question about drugs and firearms, without a reasonable suspicion that he possessed either, transformed the legal stop into an illegal stop, making his consent automatically invalid." *Id.* at 608. We rejected Gaulrapp's argument, explaining that "when there is justification for a [brief detention], it is the extension of a detention past the point reasonably justified by the initial stop, not the nature of the questions asked, that violates the Fourth Amendment." *Id.* at 609. In support of our conclusion, we explained that "[m]ere police questioning does not constitute a seizure." *Id.* (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). Thus, "[n]o seizure occurs when police, without the reasonable suspicion justifying a [brief detention], ask questions of an individual and ask to search him or her, so long as the police do not convey that compliance with the request is required." *Id.* Instead, we explained that "the

Fourth Amendment's touchstone is reasonableness, which is measured in objective terms by examining the totality of the circumstances." *Id.* at 607 (citing *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)). Finally, we concluded that "Gaulrapp's detention was not unreasonably prolonged by the asking of one question. After that question, the detention was prolonged because Gaulrapp consented to the search." *Id.* at 609.

¶13 We agree with the circuit court that *Gaulrapp* is on point. In this case, Officer Schmidt executed a traffic stop because he witnessed Ertl's traffic violations. Schmidt spoke with Ertl and subsequently asked if she would perform field sobriety tests. Ertl consented to Schmidt's request. When Ertl exited her vehicle, Schmidt then noticed the odor of intoxicants, glossy eyes, and slurred speech. Schmidt also observed signs of intoxication during the field sobriety tests, and a voluntary PBT showed a .19 BAC.

¶14 Like in *Gaulrapp*, we conclude that Ertl's traffic stop was not unreasonably prolonged by Officer Schmidt's request that Ertl submit to field sobriety tests. Based on our independent review of Schmidt's body camera video, approximately one minute elapsed from the time Schmidt began speaking with Ertl to the point at which she exited her vehicle. There is also no evidence in the record that Schmidt conveyed that compliance with his request was required.[6] *See id.* Ertl

---

[6] We note that our review of Officer Schmidt's body camera video reveals that after Schmidt inquired whether Ertl would perform field sobriety tests, Ertl asked: "Do I have to say yes? I'm just heading home." Schmidt responded, "I've seen indicators of possible intoxicated driving. So, this is kind of your chance to prove to me that you're not [intoxicated]. So, would you be willing to?" Ertl then agreed and exited her vehicle.

Ertl does not raise an appellate argument that her consent was involuntary based on this brief exchange. Nevertheless, for the sake of completeness, we conclude that Schmidt's statement did not convey to Ertl that compliance with his request was required.

consented to perform the tests; thus, "the detention was prolonged because [Ertl] consented." *See id.*

¶15    Ertl challenges the application of *Gaulrapp* to the facts of this case, however, arguing that the circuit court "overextended and misapplied *Gaulrapp*." In particular, Ertl states that there was no "reasonable justification" offered for Officer Schmidt "enlarging the scope of Ms. Ertl's detention," "which is precisely what *Gaulrapp* requires." According to Ertl, if we take "the State's argument to its logical conclusion, then in *every instance* in which a law enforcement officer detains an individual for *any* traffic or equipment violation, the officer could permissibly enlarge the scope of the person's detention by simply asking them to submit to field sobriety tests."

¶16    Ertl misunderstands the holding in *Gaulrapp*, and her argument is antithetical to both the analysis and the holding of that case. *See supra* ¶12. In *Gaulrapp*, we specifically rejected Gaulrapp's argument that "the very asking of the … question about drugs and firearms, *without a reasonable suspicion* that he possessed either, transformed the legal stop into an illegal stop." *Gaulrapp*, 207 Wis. 2d at 608 (emphasis added). We reiterated that "the nature of the questions asked" is not the proper consideration for Fourth Amendment purposes; the focus is on the question's "effect on the duration of the seizure." *Id.* at 609. In other words, law enforcement need *not* have reasonable suspicion related to the nature or topic of the questions—i.e., a loud muffler did not provide reasonable suspicion to ask Gaulrapp about the topic of drugs or weapons being in the vehicle or on his person.

¶17    Under *Gaulrapp*, Schmidt did not need reasonable suspicion of Ertl driving while intoxicated to ask Ertl if she would be willing to voluntarily submit to field sobriety tests. First, to the extent Ertl argues that Schmidt's request that she

submit to field sobriety tests was unrelated to the scope of the traffic stop for "inattentive driving," as explained above, the *Gaulrapp* court dictates that the nature (and subject) of the questions did not violate the Fourth Amendment. *See id.* at 608-09. Even if we did not rely on that statement in *Gaulrapp*, we note that one of the reasons to investigate "inattentive driving" is because it is indicative of driving while under the influence of alcohol or drugs. *See State v. Anagnos*, 2012 WI 64, ¶56, 341 Wis. 2d 576, 815 N.W.2d 675 ("The facts … lead to a reasonable suspicion that the driver of the vehicle made a series of unusual and impulsive driving choices, suggestive of impairment."); *Martin v. Forest County*, 677 F. Supp. 3d 853, 863 (E.D. Wis. 2023) ("[W]eaving within one's lane can be a sign of fatigue, inattention, or inebriation."). Therefore, we disagree that Schmidt's request was unrelated to the scope of, and reason for, the initial stop.

¶18 Regardless, under *Gaulrapp*, relation of law enforcement's request to the reason for the traffic stop is not the standard; reasonableness is the standard, including the minimal time required for the officer's request to be asked. *See id.* at 607-09. Officer Schmidt's detention of Ertl was not unreasonably prolonged by Schmidt asking one question. This question came one minute after Schmidt first contacted Ertl at her vehicle, which is not an unreasonable duration. Afterward, the detention was prolonged based solely on Ertl's consent to undertake various actions outside of her vehicle. Despite Ertl's arguments to the contrary, the amount of time it took to complete the field sobriety tests and the PBT is irrelevant. *See Gaulrapp*, 207 Wis. 2d at 609. As to Ertl's concern that law enforcement will simply ask everyone to submit to field sobriety tests at every traffic stop, we do not disagree that under *Gaulrapp*, and based on the totality of the circumstances in those situations, that result is a possibility. What Ertl fails to acknowledge, however, is

9

that the individual need not consent to this request and law enforcement cannot convey that compliance is required.

¶19    Ertl relies upon three other cases in support of her position that *Gaulrapp*'s holding is inapplicable. First, and most prominent in her argument, is *Gammons*. In that case, Gammons was a passenger in a vehicle stopped by law enforcement because the vehicle did not have a rear license plate. *Gammons*, 241 Wis. 2d 296, ¶2. The officer asked the driver whether there were any drugs in the vehicle, which the driver denied. *Id.*, ¶3. Thereafter, the officer asked for permission to search the vehicle, and the driver refused. *Id.* The officer then stated that "he would get a police dog to sniff around the vehicle and detect any drugs that were present," which prompted the driver to consent to the search. *Id.* Ultimately, law enforcement found cocaine in "the area outside the vehicle where Gammons had been positioned" and marijuana on Gammons' person. *Id.*, ¶4.

¶20    For our purposes, the *Gammons* court considered the question of whether the officer "could permissibly ask [the driver] and the others about drugs and to search the vehicle." *Id.*, ¶14. On that question, the court discussed the *Gaulrapp* holding. *Gammons*, 241 Wis. 2d 296, ¶16. In its analysis, the *Gammons* court determined that "[w]hile [the officer's] initial questions may have been permissible under … *Gaulrapp*, no additional suspicious factors suggesting drug activity developed from [the driver's] responses," and, "[t]herefore, [the officer] had no basis to continue to detain Gammons and the others after [the driver] stated that the men did not have any drugs and denied [the officer's] first request to search the vehicle." *Gammons*, 241 Wis. 2d 296, ¶24.

¶21    According to Ertl, *Gammons* "examined the appropriate application of [*Gaulrapp*'s] holding." Ertl explains that "[a]bsent any justification whatsoever,

Officer Schmidt still put the question to Ms. Ertl regarding her willingness to submit to field sobriety tests." She further reasons that "[i]f the question in *Gammons* was not sufficiently grounded in a suspicion, how could the complete and utter absence of any indicia of impairment possibly justify the extension of the scope of Ms. Ertl's detention to include field sobriety testing? The short answer is that it cannot."

¶22 Ertl misapprehends and misapplies *Gammons*' holding because *Gammons* is materially distinguishable on its facts. Unlike in *Gammons*, where the driver refused the officer's initial request, Ertl *consented* to Officer Schmidt's initial request that she submit to field sobriety tests. As the State argued, "If Ms. Ertl [had] responded no, the *Gammons* case m[ight] be applicable, but that is not the case." Further, the *Gammons* court acknowledged that the officer's initial questions "may have been permissible under … *Gaulrapp*," which are the facts we have before us in this case. *See Gammons*, 241 Wis. 2d 296, ¶24. *Gammons* said nothing about the "justification" required for the officer's *initial* questions in that case. The focus was on what occurred after the driver had refused to consent. Thus, we see no basis in *Gammons* to conclude that the circuit court erred by applying *Gaulrapp* here.[7]

---

[7] We pause to note that although not explicitly stated, Ertl's arguments appear to equate the phrase "reasonably justified," as used in *State v. Gaulrapp*, 207 Wis. 2d 600, 609, 558 N.W.2d 696 (Ct. App. 1996), with the requirement of "reasonable suspicion"—i.e., that "reasonably justified" means that law enforcement must have had "reasonable suspicion" of impaired driving for the request that Ertl exit her vehicle and conduct field sobriety tests. To the extent that is Ertl's claim, we disagree that these terms are one and the same.

¶23     Second, Ertl asserts that **State v. VanBeek**, 2021 WI 51, 397 Wis. 2d 311, 960 N.W.2d 32, is also on point.  **VanBeek** came before our supreme court on certification of the following question:  "whether a consensual encounter becomes an unconstitutional seizure under the Fourth Amendment when an officer requests and takes an individual's driver's license to the officer's squad car without reasonable suspicion."  ***Id.***, ¶1.  In **VanBeek**, law enforcement received an anonymous call that a vehicle with two passengers had been sitting in the same spot for nearly an hour, and an officer subsequently made contact with the driver, VanBeek.  ***Id.***, ¶¶3-5.  The court stated that although "VanBeek was not seized when [the officer] took her driver's license to run a records check, VanBeek was seized when [the officer] returned to her vehicle, withheld her driver's license and continued to question her and her passenger in order to hold her until a drug-sniff dog … arrived."  ***Id.***, ¶2.  "The entire incident lasted approximately 25 minutes."  ***Id.***, ¶12.  Our supreme court concluded that "the seizure was unlawful because, based on the totality of circumstances, [the officer] did not have reasonable

---

Nothing in ***Gaulrapp*** suggested that law enforcement required reasonable suspicion—or any "justification" for that matter—to ask Gaulrapp about drugs or weapons or to ask to search his vehicle or his person.  In fact, as explained above, the case states just the opposite because the focus of the stop was not the subject of the question.  Instead, we stated in ***Gaulrapp*** that the inquiry was whether the valid traffic stop was extended "past the point reasonably justified by the initial stop."  ***Id.***; *see also **Rodriguez v. United States***, 575 U.S. 348, 354 (2015) ("Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."); ***State v. Wright***, 2019 WI 45, ¶9, 386 Wis. 2d 495, 926 N.W.2d 157 (discussing the "mission" of a traffic stop).

Ertl's initial stop was due to traffic violations for deviating from her lane of travel.  One minute into the traffic stop would not have been sufficient to address the matter of the traffic violations, regardless of whether she may have received only a warning versus a ticket.  Therefore, Officer Schmidt's request did not extend the stop past a reasonably justified point under existing law.

suspicion that VanBeek was engaged in criminal activity at the time he seized her."
*Id.*

¶24 According to Ertl, "[b]ased upon the *VanBeek* court's characterization of *Gammons*," "it is evident that the *VanBeek* court was concerned about the 'proffered foundation' for 'the officer's questions' which, in that case, 'exceeded the permissible scope of the stop[,]' otherwise the *VanBeek* court would never have favorably relied on *Gammons* in the first instance."

¶25 We conclude that *VanBeek* is materially distinguishable and of no help to Ertl. Unlike in *VanBeek*, prior to Ertl's consent, Officer Schmidt executed a legal traffic stop on Ertl; he did not retain Ertl's license;[8] he did not continue to pose questions to Ertl; he was not attempting to hold Ertl at that location; and the relevant conversation lasted approximately one minute, rather than twenty-five minutes. In terms of the *VanBeek* court's reliance on *Gammons*, the court discussed *Gammons* in the context of whether the officer had reasonable suspicion that VanBeek had been, or was about to be, involved in criminal activity. *VanBeek*,

---

[8] Ertl notes that "Officer Schmidt testified that while Ms. Ertl was still seated in her vehicle, he asked her for her driver's license," and she argues that "[t]here is nothing in the record which indicates that he ever returned the driver's license to her before asking her to submit to field sobriety testing." According to Ertl, because "the burden to establish consent falls to the State and not the accused, the record in this matter does not suffice to support any conclusion the State may proffer that Ms. Ertl voluntarily consented to the field sobriety tests." (Footnote omitted.) "As such," argues Ertl, "the decision of the [circuit] court should be reversed on this ground if for no other reason."

Based on our independent review of Officer Schmidt's body camera video, Ertl never provided her driver's license to Schmidt. In the video, after Schmidt asked Ertl to perform field sobriety tests and she agreed, Schmidt asked, "Are you [Ertl]?" She replied, "Yeah. Do you need my license?" Schmidt responded, "No, that's alright." Ertl then exited the vehicle. Based upon further review of the video, there is no evidence that Ertl provided her license to Schmidt between the time she exited her vehicle and the point at which she was arrested. Thus, Ertl's assertion that her consent was not voluntary because Schmidt retained her license is not supported by the evidence in the record.

397 Wis. 2d 311, ¶¶54, 64. As we made clear above, provided that Schmidt executed a valid traffic stop on Ertl, he did not require reasonable suspicion or a "proffered foundation" to ask Ertl whether she would voluntarily submit to field sobriety tests.

¶26 Third, and finally, Ertl cites *State v. Luebeck*, 2006 WI App 87, 292 Wis. 2d 748, 715 N.W.2d 639, asserting that the case speaks to whether "Ertl's consent to field sobriety testing can even be deemed freely and voluntarily given." In *Luebeck*, we held that the police impermissibly extended the scope of a traffic stop—thus invalidating the driver's consent to a search—because he was "detained for over twenty minutes, his driver's license was held by the police, no citation or warning … had yet been issued, he passed all of the field sobriety tests and his [PBT] indicated a [BAC] below the legal limit, and yet he was" held for questioning about his passenger's ability to drive. *Id.*, ¶¶14-15, 17. We rejected the State's reliance on *Gaulrapp*, explaining that the case was distinguishable but noting that its "legal analysis"—i.e., objective reasonableness under the totality of the circumstances—"inform[ed] our conclusion." *Luebeck*, 292 Wis. 2d 748, ¶12. Ultimately, this court determined that "[u]nder the totality of the circumstances," "Luebeck, or any reasonable person in Luebeck's position, would have believed that he or she was not free to leave or terminate the encounter with the officers"; thus, "Luebeck's consent to search was tainted by the illegal seizure." *Id.*, ¶17.

¶27 As with *Gammons* and *VanBeek*, *Luebeck* is materially distinguishable from our facts. Indeed, none of these three cases address a circumstance such as occurred in *Gaulrapp* and here. Unlike in *Luebeck*, Ertl was not detained for an unreasonable amount of time, Officer Schmidt did not hold her driver's license, and Schmidt had not yet completed his investigation (in fact, he had barely started it) of the traffic violations before asking Ertl to submit to the field

14

sobriety tests. While the **_Luebeck_** court stated that whether law enforcement returned the driver's documents was "a key factor in assessing whether the person is 'seized' and, therefore, whether consent is voluntary," that factor is not relevant in this case. *See **Luebeck***, 292 Wis. 2d 748, ¶16. Thus, **_Luebeck_** does not mandate a conclusion that Schmidt's request unreasonably prolonged the traffic stop.

¶28 For the foregoing reasons, we conclude that the circuit court properly relied on this court's decision in **_Gaulrapp_** to deny Ertl's motion to suppress evidence. Officer Schmidt's request that Ertl voluntarily submit to field sobriety tests did not impermissibly or unreasonably extend the scope of Ertl's initial traffic stop.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.